**DUANE BOSWORTH, OSB #82507**
duanebosworth@dwt.com
**CAROL A. NOONAN, OSB #02407**
carolnoonan@dwt.com
**DEREK GREEN, OSB #04296**
derekgreen@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon  97201
Telephone  (503) 241-2300
Facsimile:  (503) 778-5299

Of Attorneys for Defendants Ann Rule, Free Press and Simon & Schuster

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AT PORTLAND

| | |
|---|---|
| LIYSA NORTHON, an individual; WAYLAND DeWITT, an individual; and JON "TOR" DeWITT, an individual, | Case No. 06-CV-851-MO |
| Plaintiffs, | |
| v. | **AMENDED REPLY IN SUPPORT OF ANN RULE, FREE PRESS, AND SIMON & SCHUSTER, INC.'S SPECIAL MOTION TO STRIKE PLAINTIFFS' CLAIMS PURSUANT TO ORS 31.150** |
| ANN RULE, an individual; FREE PRESS, a division of Simon & Schuster, Inc.; SIMON & SCHUSTER, INC., a Delaware corporation; and DOES I through XX, inclusive, | |
| Defendants. | **Oral argument requested** |

# TABLE OF CONTENTS

**Page**

OVERVIEW ......................................................................................................... 1

    A.    Plaintiffs' Complaint is subject to Oregon's anti-SLAPP statute. ......................... 5

    B.    Plaintiffs must prove more than a simple *prima facie* case.................................... 8

    C.    Plaintiffs cannot prove even a simple *prima facie* case. ...................................... 10

        1.    Liysa Northon is a limited public figure and must prove actual malice. .. 10

        2.    Many of the challenged statements are statements of opinion................. 12

        3.    Plaintiffs cannot prove the falsity of any of the statements. ................... 15

        4.    Liysa Northon is libel proof. .................................................................... 20

        5.    The incremental harm defense applies to all plaintiffs. ............................ 21

    D.    Plaintiff's alternative motion for leave to amend should be denied..................... 21

    E.    Plaintiff's request for additional discovery should be denied. ............................. 22

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

PDX 1471830v1 42146-6

# TABLE OF AUTHORITIES

**Page**

## Cases

*1-800 Contacts, Inc. v. Steinberg*,
107 Cal. App. 4th 568 (2003) .......................................................................... 25

*Ault v. Hustler Magazine, Inc.*,
1986 WL 20896, *6 (D. Or. Oct. 20, 1986) ...................................................... 2

*Auvil v. CBS "60 Minutes,"*
67 F. 3d 816 (9th Cir. 1995) ........................................................................... 20

*Baker v. City of Woodburn*,
190 Or. App. 445, 79 P.3d 901 (2003) ............................................................ 11

*Brown v. Gatti*,
195 Or. App. 695, 99 P. 3d 299 (2004) ............................................................ 24

*Card v. Pipes*,
398 F. Supp. 2d 1126 (D. Or. 2004) ............................................................. 7, 9

*Cardillo v. Doubleday & Co.*,
518 F.2d 638 (2d Cir. 1975) ............................................................................ 23

*Carver v. Bonds*,
135 Cal. App. 4th 328, 37 Cal. Rptr. 3d 480 (2005) ....................................... 18

*ComputerXpress, Inc. v. Jackson*,
113 Cal. Rptr. 2d 625 (Cal. App. 2001) ............................................................ 9

*Consumer Justice Center v. Trimedica International, Inc.*,
107 Cal. App. 4th 595, 132 Cal. Rptr. 2d 191 (2003) ....................................... 6

*Davis v. The Tennessean*,
83 S.W. 3d 125 (Tenn. Ct. App. 2001) ........................................................... 23

*Dean v. Guard Pub. Co., Inc.*,
73 Or. App. 656, 699 P.2d 1158 (1985) ............................................................ 5

*DeLashmitt v. Journal Publishing Co.*,
166 Or. 650, 114 P.2d 1018 (1941) ................................................................. 24

*du Charme v. International Brotherhood of Electrical Workers Local 45*,
110 Cal. App. 4th 107, 1 Cal. Rptr. 3d 501 (2003) ....................................... 5, 6

*Gardner v. Martino*,
2005 WL 3465349 (D. Or. September 19, 2005) (Civil No. 05-769-HU) ............ 7, 9

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) .................................................................................. 12, 13

*Global Telemedia Int'l, Inc. v. Doe 1*,
132 F. Supp. 2d 1261 (C.D. Cal. 2001) ........................................................... 25

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

*Jones v. General Motors Corp.*,
    139 Or. App. 244, 911 P.2d 1243 (1996),
    *aff'd*, 325 Or. 404, 939 P.2d 608 (1997) ...................................................................... 11, 19

*King v. Menolascino*,
    276 Or. 501, 555 P.2d 442 (1976) ......................................................................................... 3

*Lamb v. Rizzo*,
    391 F.3d 1133 (10th Cir. 2004) ........................................................................................... 22

*Marcone v. Penthouse Intern. Magazine for Men*,
    754 F.2d 1072 (3rd Cir. 1985) ............................................................................................ 13

*Marr v. Putnam*,
    213 Or. 17, 321 P. 2d 1061 (1958) ...................................................................................... 24

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) ..................................................................................................... 15, 23

*Milkovich v. Loraine Journal Co.*,
    497 U.S. 1 (1990) ......................................................................................................... 15, 17

*Moldea v. New York Times Co.*,
    22 F.3d 310 (D.C. Cir. 1994) ....................................................................................... 15, 17

*Muresan v. Philadelphia Romanian Pentecostal Church*,
    154 Or. App. 465, 962 P.2d 711 (1998) ................................................................................ 5

ORS 31.150(1) ..................................................................................................................... 24

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) .................................................................................. 14, 15, 18

*Perk v. The Readers Digest Association, Inc.*,
    931 F.2d 408 (6th Cir. 1991) .............................................................................................. 20

*Philadelphia Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986) ....................................................................................................... 1, 18

*Reesman v. Highfill*,
    327 Or. 597, 965 P.2d 1030 (1998) ......................................................................... 2, 18, 22

*Rice v. Comtek Mfg.*,
    766 F. Supp. 1539 (D. Or. 1990) .......................................................................................... 2

*Riley v. Harr*,
    292 F. 3d 282 (1st Cir. 2002) .............................................................................................. 16

*Rivero v. American Federation of State, County and Municipal Employees*,
    105 Cal. App. 4th 913, 130 Cal. Rptr. 2d 81 (2003) ............................................................ 8

*Rosanova v. Playboy Enterprises, Inc.*,
    580 F.2d 859 (5th Cir. 1978) .............................................................................................. 13

*Ruebke v. Globe Commc'ns Corp.*,
    738 P.2d 1246 (Kan. 1987) ........................................................................................... 12, 13

*Russell v. Thomson Newspapers, Inc.*,
    842 P.2d 896 (Utah 1992) ............................................................................................ 12, 13

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

PDX 1471830v1 42146-6

*Seelig v. Infinity Broadcasting Corp.*,
 97 Cal. App. 4th 798, 110 Cal. Rptr. 2d 108 (2002)......................................6, 7, 8, 10

*Sipple v. Foundation for National Progess*,
 71 Cal. App. 4th 226, 83 Cal. Rptr. 2d 677 (1999).............................................7, 9

*Standing Committee on Discipline v. Yagman*,
 55 F.3d 1430 (9th Cir. 1995)..........................................................15, 16, 17

*Tague, v. Citizens for Law and Order, Inc.*,
 75 Cal. App. 3d Supp. 16, 142 Cal. Rptr. 689 (1977)....................................7

*Time v. Firestone*,
 424 U.S. 448 (1976) ...............................................................13

*Traditional Cat Assoc., Inc. v. Gilbreath*,
 118 Cal. App. 4th 392, 13 Cal. Rptr. 3d 353 (2004) ..............................10

*Tuchscher Dev. Enterprises, Inc. v. San Diego Port Dist.*,
 106 Cal. App. 4th 1219 (2003)......................................................25

*Wolston v. Reader's Digest Assn., Inc.*,
 443 U.S. 157 (1979) .....................................................12, 13, 14

*Wynberg v. National Enquirer, Inc.*,
 564 F. Supp. 924 (C.D. Cal. 1982).................................................23

*Yancey v. Hamilton*,
 786 S.W.2d 854 (Ky. App. 1989) ...............................................12, 13

**Statutes**

Cal. Code Civil Proc. §425.16(2) .....................................................10

ORS 137.275 .......................................................................7, 20

ORS 31.150 ........................................................................8, 22

ORS 31.150(3) .........................................................................8

ORS 31.152(2) ........................................................................22

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

PDX 1471830v1 42146-6

## OVERVIEW

Plaintiffs concede in their Response to Defendants' Special Motion to Strike Plaintiff's Claims ("Response") that "many" of the statements alleged to be defamatory in the Amended Complaint are not defamatory. (Pls.' Resp. at 6.) Indeed they now fail to identify in their Response and attached materials what remaining statements they in fact continue to consider defamatory. They argue that the publication in question, "Heart Full of Lies" ("the Book"), taken as a whole has a "biased slant" and that it is its "cumulative effect" which is defamatory. As described herein, plaintiffs have the burden of establishing through substantial evidence the falsity of particular, identified statements in the Book. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) ("[A] plaintiff must bear the burden of showing that the speech at issue is false.") Even if plaintiffs could establish with substantial evidence that the Book has a "biased slant," that is it could have included other information to provide what plaintiffs call a "fair and unbiased" account, that proof would be insufficient, if not irrelevant, in meeting plaintiffs' burden of establishing the *falsity* of particular statements.

Plaintiffs in their Response avoid identifying statements actually contained in the Book at all. After listing in their Response the five ways in which the Book, taken as a whole, allegedly defames them or places them in a false light, and confirming that "[t]he above 5 points is a quote from the complaint," plaintiffs expressly concede that "[t]here are *not* specific, discrete statements in the book precisely making these points." (Pls.' Resp. at 3 (emphasis added).) That concession is itself dispositive of the issues in the pending Motion.[1]

---

[1] Plaintiffs have reverted to the problem which plagued the first several iterations of their complaints in a previous case in state court. It is hornbook law that courts will not take a gestalt approach to whether a 370-page book, taken as a whole, seems to defame plaintiffs or place them in a false light. It took two rounds of motions to have plaintiffs specify in a second amended complaint what statements, actually taken from the Book, they claim defamed them or placed them in a false light. Plaintiffs revert in their Response to the non-specific, holistic approach, failing to identify specific statements which they claim are actionable, and even conceding that there are not specific statements in the Book which actually make the five points they allege are defamatory or create false light, while continuing to argue that "the defamatory statements in

Page 1 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

In stating a defamation or false light action, and therefore in opposing the pending Motion to Strike, plaintiffs must specify actual statements contained in the Book and alleged to be defamatory or to create a false light, and then prove that each statement is in fact both false and defamatory. *See Rice v. Comtek Mfg.*, 766 F. Supp. 1539 (D. Or. 1990) (dismissing plaintiff's defamation claim where he alleged only the substance of the allegedly defamatory statement and not the statement itself); *Ault v. Hustler Magazine, Inc.*, 1986 WL 20896, *6 (D. Or. Oct. 20, 1986) (dismissing plaintiff's false light claim where plaintiff alleged that a magazine article "portrayed" her in a certain way but failed to specify the statements that were alleged to create the false light,[2] and explaining that the "[d]efendants are not expected to defend against *every* statement in the article") (emphasis in original).

Case law requires that *in haec verba* statements be provided in pleadings so that both the parties and this Court can examine each statement for constitutional and other privileges, and so that defendants and this Court can examine whether a statement in fact support inferences plaintiffs would draw. Oregon courts will not find a communication defamatory if the inference a plaintiff would draw from the actual words is too tenuous. *Reesman v. Highfill*, 327 Or. 597, 965 P.2d 1030 (1998); *King v. Menolascino*, 276 Or. 501, 555 P.2d 442 (1976). A court cannot make this determination if plaintiffs do not quote what it is they contend supports the alleged defamatory inferences. Plaintiffs' failure to provide substantial evidence establishing the falsity of the specific statements actually found in the Book is dispositive of the pending motion.

Moreover, to the extent that plaintiffs offer any argument that the conclusions of the Book are "false," plaintiffs assiduously avoid in their entirety the most damning evidence against them, including but not limited to late-discovered evidence concerning computer e-mail.

---

Ann Rule's book are not neatly set out in discrete passages" and insisting that "it is truly the book in its entirety that is defamatory." (Pls.' Resp. at 20.).

[2] The court also considered plaintiff's failure to allege actual malice, but it is clear that the court's analysis of the failure to provide the actual statements claimed to be false is independent and fully dispositive.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

Among many other things, plaintiffs wholly fail to address that Liysa Northon smuggled a letter out of the jail, asking her friend to get rid of her computer, and saying "Destroy it ASAP. My Gateway could hang me because e-mails are forever on hard drive. Get it *away* ASAP. Soon. Please. Before someone searches your place" (Book, p. 279-80); that Liysa Northon instructed her father to destroy his own computer with e-mails she had sent him, promising to buy him another one (*id.* at 280); that a few weeks before her husband was killed, Liysa Northon had asked her best friend for poison, Valium or sleeping pills, and where any swift-running rivers were (*id.* at 308); that she wrote an e-mail which appeared to have been to her father stating that "I am going to have to end it one way or another soon. There have been some really ugly public scenes, and my friends at the pool look at my bruises and don't know what to say. Drowning is the best in terms of detection -- but I want a gun for backup and then we'll have to get a sure-fire disposal method. Both of us will have to throw the computers away because I just read they can trace e-mail on hard drives" (*id.* at 318); that she requested a silencer in an e-mail, apparently to her father (*id.* at 319); and that her own attorneys concluded that the prosecution would have a field day demonstrating that Liysa Northon had been planning her husband's death for a long time, probably more than a year (*id.* at 329). Plaintiffs also do not address the fact that while Liysa Northon swore to Governor Kitzhaber that "my children and I were under constant threat of death" (Rule Decl. ¶ 28 and Ex. 18 thereto, previously filed), she chose to go camping alone with her husband in one of the most remote areas of Oregon and in the most remote camping space available. They further do not address that she concedes that she shot and killed her husband after already being inside her vehicle, and returning, instead of escaping, to shoot her husband while he slept. It is this evidence, together with many other inconsistencies and many other facts described in the Book, which form the basis for the Book's conclusions. Plaintiffs simply avoid addressing any of this evidence.

At bottom, plaintiffs complain that defendants presented a "biased slant" and that defendants "failed to mention" information reflecting positively on the plaintiffs. They complain

Page 3 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150

that defendants failed to use information "from Liysa's camp."[3]  (Pls.' Resp. at 3.)  In other words, they complain that the portraits of the plaintiffs are not "fair and balanced."  Even if they could establish the same, it would not meet their burden of proving the falsity of particular statements actually found in the Book, or the falsity of non-tenuous inferences reasonably drawn from those statements.  That a publication presents an "unbalanced" portrait or omits positive facts does not make it subject to a defamation or false light claim.  Plaintiffs misperceive the elements of their causes of action, which require them to show not that the portraits are unfair or omit the positive, but rather that actual statements are false.  Moreover, in order to state a false light claim, plaintiffs must prove actual malice.  *Dean v. Guard Pub. Co., Inc.*, 73 Or. App. 656, 659-60, 699 P.2d 1158 (1985); *Muresan v. Philadelphia Romanian Pentecostal Church*, 154 Or. App. 465, 475, 962 P.2d 711 (1998).  May 22, 1985  Plaintiffs offer no proof of actual malice. Accordingly, all of plaintiffs' false light claims should be stricken.

---

[3] Judge Steven Price of Washington County Circuit Court presided over the hearing on Liysa Northon's petition for post-conviction relief.  Ms. Northon was represented by an experienced attorney who presumably presented all available evidence concerning the background to the crime, the reasons for Ms. Northon's actions, and indeed all available and relevant information "from Liysa's camp."  Judge Price found the following, after hearing all of the evidence:  "Ms. Northon had concocted a plan to make the killing look like self defense by a battered woman.  … In fact she probably drugged [her husband], tried to shock him with a stun gun in the river, and had handcuffed him before shooting him.  She tried to make the campground look like the scene of a struggle.  …  Ms. Northon also neglected to tell anyone, including her attorneys, that, before the incident, she had exchanged e-mails with her father regarding plans to kill her husband. Neither did she tell them that she had reported the involved computer stolen but had really given it to her friend, … to hold for her.  …  Ms. Northon told her attorneys that she was a battered woman and related facts and incidents to prove it.  The attorneys had the facts and incidents thoroughly investigated.  They learned that the vast majority of Ms. Northon's facts and incidents were not true.  The attorneys also learned the toxicological tests on Mr. Northon's remains indicated that he had not consumed alcohol and drugs in the amounts Ms. Northon claimed.  …  [Northon's best friend] Joan Monteillet would verify the poison and stun gun incidents.  …  Before obtaining the computer and re-interviewing Joan Monteillet, the State had a strong, but circumstantial, case that Ms. Northon had plotted to kill her husband and make it look like self defense.  There were inconsistencies in Ms. Northon's stories, and there were the works of fiction that bore a remarkable resemblance to the actual crime.  However, the new information was different.  It was evidence of communication, not clothed in fiction, that Ms. Northon wanted to, planned to and did kill her husband."  (Rule Decl. ¶ 15 and Ex. 5 thereto.)  Again, the Court reached these conclusions after hearing all of the positive evidence that Liysa Northon's attorney could adduce.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

**A.      Plaintiffs' Complaint is subject to Oregon's anti-SLAPP statute.**

Plaintiffs' claims arise out of defendants' conduct in furtherance of the constitutional right of free speech in connection with an issue of public interest. Plaintiffs concede that defendants' conduct in researching, writing, and publishing the Book is conduct in furtherance of the right of free speech. They argue, however, that the conduct was not in connection with an issue of public interest. Plaintiffs insist that publishing is not "in connection with an issue of public interest" unless the public has some way of "impacting the decision" regarding the issue discussed. Plaintiffs manufacture a requirement that does not exist in case law.[4]

The decision in *Seelig v. Infinity Broadcasting Corp.*, 97 Cal. App. 4th 798, 110 Cal. Rptr. 2d 108 (2002), demonstrates this point and shows that the Book relates to a matter of public interest. In *Seelig*, the plaintiff was a contestant on the television program *Who Wants to Marry a Millionaire. Id.* at 801. The plaintiff's sole participation in any broadcast portion of the show was to state her name, where she was from, and where she worked *Id.* The defendant radio station asked plaintiff to participate in a discussion regarding the television show, and

---

[4] In fact, the *du Charme* court *explicitly* limited its newly-established requirement to a situation unlike the present case, which involves not only a homicide, but a homicide in which plaintiff Liysa Northon controversially attempted to create a battered woman defense:

> We therefore hold that in order to satisfy the public issue/issue of public interest requirement of [California's] anti-SLAPP statute, *in cases where the issue is not of interest to the public at large*, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance.

*du Charme v. International Brotherhood of Electrical Workers Local 45*, 110 Cal. App. 4th 107, 119, 1 Cal. Rptr. 3d 501 (2003)(emphasis supplied). Similarly, the court in *Consumer Justice Center v. Trimedica International, Inc.*, 107 Cal. App. 4th 595, 601-02, 132 Cal. Rptr. 2d 191 (2003) looked beyond the mere fact that the internet advertising at issue related to a particular product, finding it significant that the herbal supplement at issue, which allegedly enhanced women's breasts, "does not treat life-threatening conditions…, nor is there evidence it is widely used," and that it was purely commercial speech.

Page 5 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150

plaintiff declined.  *Id.* at 802.  Two weeks later (but before the television show had aired), the radio program hosts called plaintiff a "chicken butt" and a "local loser," and reported that the plaintiff's ex-husband had called her "a big skank."  *Id.* at 802-05.  The California Court of Appeals held that the conduct at issue was "in connection with an issue of public interest" because it was "about a television show of significant interest to the public and the media."  *Id.* at 807.  The court noted that the plaintiff had "subjected herself to inevitable scrutiny and potential ridicule by the public and the media" by choosing to appear on the TV show.  *Id.* at 808.  Even the subject of plaintiff's refusal to appear on the radio program was an issue of public interest, according to the court, where the topic of the radio program was "plaintiff's appearance on the Show, and 'why she wants to marry some random guy.'"  *Id.* at 808.

       *Seelig* does not involve the opportunity for the public to "influence a decision" relating to plaintiff's participation on the show.  It involves merely the discussion of the plaintiff's participation in a TV show.

       Similarly, the Book involves an issue of significant public interest: a controversial crime and the workings of the criminal justice system in addressing legal issues regarding "battered women."  *See Tague v. Citizens for Law and Order, Inc.*, 75 Cal. App. 3d Supp. 16, 142 Cal. Rptr. 689 (1977) (explaining that the subject of crimes and criminals "plunges deeply into the heart of public concern").  As *Seelig* and a number of cases (including several decided in Oregon) demonstrate, debate may be sparked and encouraged by the discussion of one individual's involvement in an issue of public interest.  97 Cal. App. 4th at 807-08; *Gardner v. Martino*, 2005 WL 3465349 (D. Or. September 19, 2005) (Civil No. 05-769-HU) (explaining comments on talk-radio show about a single consumer's treatment by a mom and pop retailer constituted statements about a public issue); *Card v. Pipes*, 398 F. Supp. 2d 1126, 1137 (D. Or. 2004) (finding that individual's alleged "anti-Israel" statements were in connection with an interest of public concern); *see also Sipple v. Foundation for National Progess*, 71 Cal. App. 4th 226, 83 Cal. Rptr. 2d 677 (1999) (holding that magazine article publicizing alleged domestic

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

violence by plaintiff was in connection with an issue of public interest because article addressed domestic violence, "an extremely important public issue in our society"). Moreover, like the plaintiff in *Seelig*, plaintiff Northon voluntarily subjected herself and those around her to inevitable scrutiny by the public and the media by advancing a controversial defense and placing blame for her crime on the victim, even when sufficient evidence existed to later persuade her to plead guilty to manslaughter.

As the *Rivero* court pointed out, "None of [the decided] cases defines the precise boundaries of a public issue, but in each of these cases, the subject statements either concerned a person or entity in the public eye …, conduct that could directly affect a large number of people beyond the direct participants …, or a topic of widespread, public interest. *Rivero v. American Federation of State, County and Municipal Employees*, *AFL-CIO*, 105 Cal. App. 4th 913, 924, 130 Cal. Rptr. 2d 81 (2003). Plaintiffs take an out-of-context excerpt from defendant Ann Rule's Declaration to support their position that the subject of the book was not a topic of widespread, public interest, noting that Ms. Rule's research "did not uncover any substantial coverage of the trial by the major newspapers in Oregon." (Pls.' Resp. at 10.) That phrase is preceded, however, by the sentences "The trial of Liysa Northon attracted media attention from a variety of sources. The trial proceedings, which began on July 16, 2001, were recorded for television by Court TV. A number of print and local media sources covered the trial as well." (Rule Decl. ¶ 9.) Even without Court TV and other coverage, a homicide is per se an issue of public interest, and a homicide with a "concocted," as Judge Price found, defense of battered woman syndrome is a matter of very significant public interest.

The other arguments listed by plaintiffs in support of their conclusion are similarly invalid. Plaintiffs argue that application of the anti-SLAPP statute in this situation would deprive all criminal defendants of the right to a remedy for reputational injury as well as violate ORS 137.275, which provides that convicted felons may maintain a civil action. (Pls.' Resp. at 10.) Both contentions are without merit. Any plaintiff will recover for injury to her

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

reputation if her claims are meritorious regardless of whether the anti-SLAPP statute applies. She needs, however, to establish through substantial evidence the probability that she will prevail on the claim in order to survive a special motion to strike. ORS 31.150. The statute does not interfere with the rights of convicted felons or any person.

Finally, multiple courts have rejected the notion that the anti-SLAPP statute is not available to media (or "wealthy") defendants. *Sipple*, 71 Cal. App. 4th at 240 ("Appellant's assertion that the statute was aimed at protecting economically weak individuals, rather than the media, has been addressed and rejected. … [T]he court found that anti-SLAPP suits are not limited to paradigm SLAPP suits filed by powerful and wealthy plaintiffs, such as developers, against impecunious protesters, and that [California's anti-SLAPP statute] does apply to media defendants in libel actions."); *see also Gardner*, 2005 WL 3465349 (applying statute to talk-radio show host and parent company of radio station); *Card*, 398 F. Supp. 2d 1126 (applying statute to newspaper).

As both sides have noted, the anti-SLAPP statute protects open discussion on issues of public interest. It must be applied in this case to encourage discussion and debate relating to criminal activity, the battered woman defense, and the criminal justice system.

## B.   Plaintiffs must prove more than a simple *prima facie* case.

Under ORS 31.150(3), plaintiffs must present "substantial evidence to support a prima facie case, showing a "probability that the plaintiff will prevail on the claim." "[T]he plaintiff cannot simply rely on the allegations in the complaint ... but must provide the court with sufficient evidence to permit the court to determine whether there is a probability that the plaintiff will prevail on the claim." *Gardner v. Martino*, 2005 WL 3465349 at *8 (D. Or. Sept. 19, 2005) (quoting *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 641 (Cal. App. 2001)). Plaintiffs' assertion that they can overcome a special motion to strike merely by "show[ing a] simple *prima facie* case" is not supported by the California law upon which the assertion relies. Moreover, plaintiffs' position ignores a significant distinction in the evidentiary

Page 8 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150

requirements between the Oregon and California statutes.

First, California courts have interpreted that state's law as requiring a plaintiff to demonstrate more than a *prima facie* case. *See Seelig*, 97 Cal. App. 4th at 809 (2002) (finding plaintiff did not establish a reasonable probability that she would prevail on her claims). The plaintiff's burden requires providing "the court with sufficient evidence to permit the court to determine whether there is a probability that the plaintiff will prevail on the claim." *Traditional Cat Assoc., Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 398, 13 Cal. Rptr. 3d 353 (2004). As the *Gilbreath* court explained, an anti-SLAPP motion "contemplates consideration of the substantive merits of the plaintiffs' complaint, as well as all available defenses to it, including, but not limited to constitutional defenses." *Id*. Determining the merits of a plaintiff's case requires analysis of the evidence provided by *both* parties. *Id.* ("Importantly, the court can also consider a defendants' opposing evidence to determine whether it defeats a plaintiff's case as a matter of law.") (internal citations and quotations omitted).

Importantly, plaintiffs' bare accusations, lacking significant supporting evidence and countered by substantial supporting evidence by defendants, are insufficient to demonstrate a probability plaintiffs will prevail. Courts do not, as plaintiffs contend, assume plaintiffs' allegations to be true in the face of overwhelming evidence to the contrary. Plaintiffs have not offered substantial evidence to rebut defendants' defenses including substantial truth and opinion,[5] or even to establish the falsity of statements in the first instance. Plaintiffs' Response wholly fails, for example, to address the e-mails and other evidence taken from Liysa Northon's computer which led to her guilty plea. The materials taken from the computer show that she planned her husband's death in advance of the camping trip and they provide the basis for the conclusion that Liysa Northon's shooting of her husband was premeditated. (Birmingham Aff. at 9, 16, 21-22, 26, attached as Ex. 6 to Rule Decl. ¶ 16, previously filed.) That evidence is also

---

[5] As described before, plaintiffs also fail to provide any evidence of actual malice and that alone is dispositive of all of plaintiffs' false light claims.

Page 9 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150

what involves Wayland DeWitt in the incidents.  (*Id.*)

A plaintiff opposing a motion under Oregon's anti-SLAPP statute has an even greater burden than a similar plaintiff under California law, moreover.  California's anti-SLAPP statute lacks the Oregon requirement that a plaintiff present "substantial evidence" to support her position.  *See* Cal. Code Civil Proc. §425.16(2) (requiring only that a plaintiff "establish that there is a probability that the plaintiff will prevail on the claim").  The addition by the Oregon legislature of that language demonstrates the requirement of an increased evidentiary showing necessary to support a probability of success on the merits.  *See, e.g., Baker v. City of Woodburn*, 190 Or. App. 445, 455-56, 79 P.3d 901 (2003) ("Substantial evidence is different from any evidence or some evidence.") (internal citations omitted); *Jones v. General Motors Corp.*, 139 Or. App. 244, 254, 911 P.2d 1243 (1996), *aff'd*, 325 Or. 404, 939 P.2d 608 (1997).

Plaintiffs under Oregon's anti-SLAPP law must present persuasive evidence that they are likely to succeed, not merely that there is some remote possibility of such a result; plaintiffs must present "substantial evidence," not some evidence, demonstrating the probability they will succeed, not a possibility.  A plaintiff does not defeat an anti-SLAPP motion in Oregon by offering a "simple prima facie case," as plaintiffs argue.  (Pls.' Resp. at 11.)

C.    **Plaintiffs cannot prove even a simple *prima facie* case.**

1.    **Liysa Northon is a limited public figure and must prove actual malice.**

Liysa Northon is a "limited public figure" as courts throughout the country have interpreted that term.  Oregon's limited case law on the topic does not suggest otherwise.

Plaintiffs ask this Court not to consider the "limited public figure" analysis of other jurisdictions on the ground that Oregon courts follow "the federal case law on the issue of determining if someone is a public figure."  (Pls.' Resp. at 17-18.)  Plaintiffs' false premise is that the cases cited by defendants do not follow the federal analysis of the limited public figures.  That is wrong.  In *Ruebke v. Globe Commc'ns Corp.*, 738 P.2d 1246, 1251 (Kan. 1987), an opinion discussed in defendant's opening memorandum, the Kansas Supreme Court could not

Page 10 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150

have been more clear on this point: "While Kansas courts have not considered the issue of the criminal defendant's status as a limited public figure, we adopt the reasoning of the U.S. Supreme Court in *Wolston v. Reader's Digest Assn., Inc.*, 443 U.S. 157 (1979)." The other cases cited by defendants are similarly grounded in the federal analysis. *See Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 903 n.20 (Utah 1992) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), and *Wolston*, and following *Ruebke*); *Yancey v. Hamilton*, 786 S.W.2d 854, 859 (Ky. App. 1989) (quoting *Gertz's* analysis of limited public figures).

As these courts have recognized, and contrary to plaintiffs' assertion, there is no blanket rule under the "federal analysis" that holds that one's criminal conduct cannot transform that person into a limited public figure.[6] *See, e.g, Ruebke*, 738 P.2d at 1251; *Russell*, 842 P.2d at 903 n.20. And it is this point that plaintiffs misconstrue. Liysa Northon did not become a limited public figure "by defending herself against criminal prosecution." (Pls.' Resp. at 19.) She became a limited public figure by intentionally taking her husband's life in a felonious manner and then publicly trying to blame him for it—before pleading guilty to her crime. *See, e.g., Yancey,* 786 S.W. 2d at 859 ("explaining that publicly confessing to heinous crimes of murder" can transform person into limited public figure). Like other limited public figures, Liysa Northon became a limited public figure through her conduct.[7] Contrary to plaintiffs' assertion, she does not escape this conclusion merely because her conduct was criminal.

---

[6] Neither *Time v. Firestone*, 424 U.S. 448 (1976), nor *Wolston*—the two cases cited by plaintiff—support such a contention. In holding that a person's failure to appear before a grand jury did not automatically transform that person into a limited public figure, the Court in *Wolston* emphasized the person's "minor role" in the public controversy that surrounded the investigation of Soviet espionage. 443 U.S. at 167. *Firestone* involved a divorce proceeding. 424 U.S. at 453-54.

[7] "It is no answer to the assertion that one is a public figure to say, truthfully, that one doesn't choose to be." *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 861 (5th Cir. 1978). "It is sufficient … that [the plaintiff] voluntarily engaged in a course that was bound to invite attention and comment." *Id.*; *accord Marcone v. Penthouse Intern. Magazine for Men*, 754 F.2d 1072, 1086 (3rd Cir. 1985) ("We are in agreement with the Fifth Circuit that if [the plaintiff's] actions are sufficient to transform him into a limited public figure, it is of no moment that [he] did not desire such status.").

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

PPDX 1471830v1 42146-6

*Ruebke*, 738 P.2d at 1251 ("The public figure status of a criminal defendant … is to be determined no differently than in any other libel case; namely, by focusing on the 'nature and extent of an individual's participation in the controversy giving rise to the [alleged] defamation.'") (citing *Wolston*, 443 U.S. at 167).

Thus, as to statements that are allegedly defamatory to Liysa Northon, plaintiffs must prove actual malice.  Plaintiffs have not produced any evidence of actual malice.

### 2.      Many of the challenged statements are statements of opinion.

Aside from failing to establish the falsity of any statements challenged in their pending complaint, plaintiffs provide no basis for their conclusory contention that none of the challenged statements are nonactionable statements of opinion.  Instead, they argue only that *Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995) must be distinguished.  Their argument appears to be that because the author in that matter was an attorney involved in the trials discussed in the book containing the challenged statements, it therefore was clear the book represented his interpretation of the facts.  (Pls.' Resp. at 16.)  It is no less clear in this case, however, that the Book represents the author's interpretation of the facts.  The Book describes how the author researched the facts and how she reached her conclusions.  The Book describes how the author examined the crime scene and the questions it raised in her own mind (Book, pp. 357-58); it describes the author's heavy reliance on the public record and forensic evidence (Book, p. 359); it describes how Liysa Northon ultimately declined to communicate with the author about the case (Book, p. 358), and how the author conducted interviews and had other correspondence with friends of Liysa and Chris Northon, investigators, prosecutors, courtroom spectators and anonymous contributors[8] (Book, pp. 1-2, 358-59).  Although the author was not herself an attorney in the criminal trial, she nevertheless establishes the extent of her involvement through the description of her research contained in the Book.  In this way, the

---

[8] Defendants also note that the author necessarily gave less credence to anonymous reports or those would not provide support for their conclusions.  (Book, pp. 1-2.)

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

Book clearly conveys that it is the author's conclusion regarding the crime and surrounding facts, based on all the evidence she reviewed. *Partington* is directly on point. 56 F.3d 1147 ("[W]hen an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.").

So too are multiple other appellate court decisions. In *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 519 (1991), the U.S. Supreme Court reiterated after *Milkovich v. Loraine Journal Co.*, 497 U.S. 1 (1990) that "[t]he protection for rational interpretation serves First Amendment principles by allowing an author the interpretive license that is necessary when relying upon ambiguous sources." And *Moldea v. New York Times Co.*, 22 F.3d 310, 315 (D.C. Cir. 1994) elaborated that "when a writer is evaluating or giving an account of inherently ambiguous materials or subject matter, the First Amendment requires that the courts allow latitude for interpretation."

The Ninth Circuit has followed these decisions. *Standing Committee on Discipline v. Yagman*, 55 F.3d 1430 (9th Cir. 1995). In *Yagman*, an attorney appealed a disciplinary action against him based on comments he made to a local newspaper about a judge, including that the judge "has a penchant for sanctioning Jewish lawyers: me, David Kenner and Hugh Manes. I find this to be evidence of anti-semitism." *Id.* The court first explained that "[a]ttorneys who make statements impugning the integrity of a judge are … entitled to other First Amendment protections applicable in the defamation context." *Id.* at 1438. The court then held that because the attorney had disclosed the basis for his opinion (that he and the two other attorneys were all Jewish and had been sanctioned by the judge), the statement was a nonactionable statement of opinion. The court explained that the statement "did not imply the existence of additional, undisclosed facts; it was carefully phrased in terms of an inference drawn from the facts specified rather than a bald accusation of bias against Jews." *Id.* at 1440. Further, "[r]eaders were free to form another, perhaps contradictory opinion from the same facts, as no

Page 13 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150

doubt they did." *Id.* (quotation marks and citation omitted); *see also Riley v. Harr*, 292 F. 3d 282 (1st Cir. 2002) (affirming summary judgment for author and publisher of book "A Civil Action" because implication that owner of tannery had dumped toxic chemicals on property and lied about it was protected opinion; describing "even a provably false statement is not actionable if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts"; and reasoning that the subject of the book is a controversial lawsuit and in writing about "inherently ambiguous" subjects, an author who "fairly describes the general events involved and offers his personal perspective about some of [the] ambiguities and disputed facts" should not be subject to a defamation action).

        Similarly, the Book sets forth the basis for the statements of opinion contained in it.  In addition to describing what sources the author used in researching the work, defendants also conveyed all of the information discovered.  The Book not only states that Liysa Northon's son, Aukai King, told investigators that he witnessed abuse of Liysa Northon by Chris Northon and that he had seen Chris Northon drunk and stated that he drank a lot, but quotes extensively from the interview with the child.  (Book, pp. 199-201.)  The Book describes the information given to investigators by friends and family of Liysa Northon, as well as other witnesses, about alleged abuse by her husband.  (Book, pp. 142-144, 161-162, 167-168, 177-180, 227-230, 244-245, 251-253, 265, 270-271.)  The Book reveals that several friends saw bruises (including a black eye and swollen lips) on Liysa Northon and tells of Liysa Northon's report to a medical clinic doctor following alleged abuse.  (Book, pp. 136-137, 142-143, 267.)  It describes the time Liysa Northon broke down and told a group of friends about the alleged abuse.  (Book, pp. 127-128.)  It discloses that a friend of Liysa Northon's saw Chris Northon smoking marijuana. (Book, p. 267.)  The Book also includes an admission that Chris Northon allegedly made to a friend of Liysa Northon's that he had been violent with her.  (Book, p. 244.)

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

The Book also discusses inconsistencies in Liysa Northon's stories and lies that she told to her attorneys, and describes the information found on Liysa Northon's computer, which led to her plea agreement. The Book presents the entire basis for all statements of opinion and interpretation of facts, and no statement of opinion implies the existence of undisclosed facts. As in *Moldea*, "[b]ecause the reader understands that such supported opinions represent the writer's interpretation of the facts presented and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation." 22 F.3d at 317 (quotation marks and citation omitted). And, as in *Yagman*, defendants' statements are "protected by the First Amendment as an expression of opinion based on stated facts." 55 F.3d at 1440.

Finally, plaintiffs do not state which of the challenged statements they contend implies the assertion of objective fact, and do not provide specific evidence that any of the statements is not opinion supported by facts the author uncovered during her research. Statements of opinion are only actionable if they "imply a *provably* false fact, or rely upon stated facts that are *provably* false." *Id.* at 313 (citing *Milkovich*, 497 U.S. 1) (emphasis added). Plaintiffs have done nothing to prove that any of the challenged statements imply or rely upon false facts, and indeed in their Response they fail even to *identify* what statements they believe are false. Plaintiffs have not proved a probability of success on any of their claims regarding statements of opinion.

### 3.    Plaintiffs cannot prove the falsity of any of the statements.

Plaintiffs' accounting of the steps necessary to prove defamation glosses over a key requirement: proof that the challenged statement is false. As the Oregon Supreme Court has stated, "To be actionable, a communication must be both false and defamatory." *Reesman v. Highfill*, 327 Or. 597, 604 (1999). The burden is on the plaintiff in a defamation suit concerning

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

a matter of public interest to prove the falsity of a challenged statement.[9]  *Hepps*, 475 U.S. at 777.  Such a rule is necessary to "ensure that true speech on matters of public concern is not deterred," *id.* at 776, and it applies to both public and private figures, *id.* at 775-78.

Plaintiffs fail to address this constitutional requirement, instead focusing on whether the alleged statements could have defamatory meanings.  (*See* Pl.'s Resp. at 12-15.)  But failure to prove falsity is grounds for granting defendants' Anti-SLAPP motion.  *See, e.g.*, *Carver v. Bonds*, 135 Cal. App. 4th 328, 344, 37 Cal. Rptr. 3d 480 (2005) (stating that a "motion to strike should be granted if the defendant defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element") (internal quotation omitted).

Plaintiffs have failed to satisfy their burden with respect to proving falsity.  Statements plaintiffs alleged to be defamatory in their complaint are not even directly addressed or challenged.  As but a few examples: plaintiffs have alleged defamation and false light on the basis of Ms. Rule's descriptions of the differing stories Liysa Northon recounted to various sources about the events surrounding her husband's death (*see* Compl. at 6 and 20)—but Liysa Northon does not contradict that she made such statements.  Another example is that plaintiffs allege defamation based on Ms. Rule's recounting of a conversation with Dr. Jones regarding Liysa Northon's relationship with Chris Northon prior to their marriage.  (Compl. at 7.)  Again, Liysa Northon provides no evidence to contest the challenged statement.

Moreover, many of plaintiffs' assertions, again tellingly made without actually providing any quote from the Book, simply misrepresent what the author actually wrote.  For example, plaintiffs assert that the author defamed Wayland DeWitt by accusing him of removing items from Chris Northon's Bend home without permission.  (*See* Pls.' Resp. at 14 ("Wayland

---

[9] Plaintiffs face the same burden with respect to the false light claims.  *See, e.g., Partington v. Bugliosi*, 56 F.3d 1147, 1160 (9th Cir. 1995) ("We reject Partingtons false light claims … for the same reason that we rejected his defamation claims based on [the same] statements: both statements are protected by the First Amendment, regardless of the form of tort alleged.").

Page 16 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150

was not even present for this [confrontation involving the removal of items from Chris' home], yet Ann Rule states he was.").)  Both Wayland and Tor DeWitt submit affidavits making the same allegation—that the author stated Wayland was present for the removal of the property. (Wayland DeWitt Aff. ¶13; Tor DeWitt Aff. ¶6.)  As is the case throughout Plaintiffs' Response and accompanying Affidavits, these allegations fail to quote any statement in the Book and alleged in plaintiffs' pending complaint which states that Wayland DeWitt was present during this confrontation—for good reason:  There is no such statement.  What the Book *actually* states is that those present were "Tor and a male friend, Tor's ex-wife, Jimmie Rhonda, and Liysa's newest friend, Mia Rose."  (Book, p. 206.)[10]  Plaintiffs cannot claim defamation based on statements that were never made.  The above example is just one of repeated instances in which plaintiffs complain, without support, of statements not actually made.

In addition, even if *some* evidence might exist which arguably contradicts a conclusion within a challenged statement, that does not of itself mean that a plaintiff has met her burden of proving that the statement at issue is false when other evidence supports the conclusion.  Contradictory evidence may prevent a plaintiff from meeting his burden of proving falsity.  *See Auvil v. CBS "60 Minutes,"* 67 F. 3d 816 (9th Cir. 1995) (applying Washington law); *Perk v. The Readers Digest Association, Inc.*, 931 F.2d 408 (6th Cir. 1991) (affirming summary judgment for defendants on plaintiff's defamation claim where plaintiff alleged that defendants' sources were known to be biased because "[t]he overwhelming number of sources, however, support the picture presented in the article").

*Auvil v. CBS "60 Minutes"* is a case in point.  The *Auvil* plaintiff apple growers sued CBS "60 Minutes" after it broadcast statements regarding the alleged carcinogenic effect of daminozide, a chemical applied to apples.  CBS based its statements on animal studies showing a

---

[10] The Book's only reference to Wayland DeWitt with regard to this incident is earlier: that "Wayland DeWitt had already written to the Northons, warning them not to sell Chris's grand piano or his rental properties because those should be saved for Bjorn …. [I]t disturbed the Northons when they realized Wayland was carrying out orders from Liysa."  (Book, p. 206.)

Page 17 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150

link between daminozide and cancer. The plaintiffs argued that the statement was false because there were no studies on humans, and countered with "evidence that the studies are *not conclusive*, that there are no studies tracing the specific link between ingestion of daminozide and incidence of cancer in humans." *Id.* at 821, 822 n.11 (emphasis in original). The Ninth Circuit nonetheless affirmed summary judgment on the basis of the evidence defendants had, stating that "[i]t is considerably easier to prove the falsity of an assertion that studies are conclusive, rather than to prove the falsity of the studies themselves." *Id.*

       To the extent they offer any evidence, plaintiffs here rely on the same type of evidence as that proffered in *Auvil*. Rather than presenting evidence to directly contradict the challenged statements that defendants published, plaintiffs often merely assert a separate issue that neither proves nor disproves the truth of the challenged statement. One representative example is the plaintiffs' charge of defamation based on defendants' statement that Chris Northon "was not perfect" and had been reckless in riding a bike home with his son on the back after having an alcoholic beverage. (Book, p. 166.) As addressed in the defendants' opening memorandum, how this statement—which does not even apply to plaintiffs and would seem to support the view of Chris Northon espoused by plaintiffs—is even plausibly defamatory to plaintiffs is not apparent. (Memo. in Supp. of Defs.' Spec. Mot. to Strike at 65). Assuming the statement somehow was defamatory, however, plaintiffs have provided no evidence that the statement was false. Instead, plaintiffs allege through Liysa Northon's Affidavit that "Chris drove while intoxicated with Dane in the vehicle. … Ann Rule … altered this negative fact to make Chris appear positive by stating he simply rode a bicycle with Dane while intoxicated." (Lisya Northon Aff. ¶40(i).) There's no evidence that Ms. Rule "altered" a fact about any alleged driving incident. Whether Chris Northon drove drunk with his son in the car at some point has no bearing on the Book's statement that Chris Northon rode a bike with his son after having a drink.

Page 18 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150

Similarly, plaintiffs argue repeatedly that defendants "discredited" voluminous evidence (Pls.' Resp. at 3, 4, 14), but they provide no citation to the Book. Nor do plaintiffs explain in what way the "discrediting" is defamatory and they do not point to any defamatory statement or implication. Finally, plaintiffs do not address the fact that evidence uncovered by the police itself discredited claims made by plaintiffs. The Book describes the damning evidence and reaches certain conclusions based on it. (Birmingham Aff. at 9, 16, 21-22, 26.) Plaintiffs pointedly avoid even addressing this damning evidence, and they fail to meet their burden of proving that the Book's conclusions were false.

Plaintiffs assert that plaintiff Liysa Northon was not properly portrayed as a "battered woman." (Pls.' Resp. at 2, 14.) As the Book describes, Liysa Northon's own defense attorney determined, based on all the evidence, that she could not be portrayed at trial as a battered woman; she just did not possess characteristics described in the voluminous studies on the subject. (Birmingham Aff. at 11-18.) Moreover, evidence recovered from her computer indicates that plaintiff was at the very least exaggerating her claims of abuse if not fabricating them entirely. (Birmingham Aff. at 9, 16, 21-22, 26.) And Judge Price concluded that "Ms. Northon had concocted a plan to make the killing look like self defense by a battered woman." (Rule Decl. ¶ 15 and Ex. 5 thereto.)

In summary, the affidavits of the plaintiffs do not contradict statements in the Book that are challenged in plaintiffs' pending complaint, much less prove that any such statement is false and defamatory.[11]

---

[11] Although Wayland DeWitt's affidavit points out one minor falsity in the Book, that his degree is a Doctorate of Education in counseling rather than a Ph.D. in social work (Wayland DeWitt Aff. ¶ 3), such a statement is not defamatory. Wayland DeWitt contends that it is defamatory because colleagues believe that he has misrepresented his credentials. However, "[w]hen defamation by implication is alleged, this court has held that the link between the communication and the defamatory inference must not be 'too tenuous.'" *Reesman*, 327 Or. at 604. The Book contains no statements implying that Wayland DeWitt misrepresented his credentials. That is a too tenuous inference to be drawn from the facially neutral statement that Wayland DeWitt earned a Ph.D.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

PPDX 1471830v1 42146-6

### 4.    Liysa Northon is libel proof.

Plaintiffs' argument that the Oregon legislature has rejected the libel proof plaintiff doctrine is not correct. Plaintiffs claim that ORS 137.275, under which convicted felons `retain certain rights, prevents application of the doctrine. However, that a felon generally has rights to participate in a civil action does not in any way preclude the application of a defense in a particular lawsuit. ORS 137.275 does not prohibit the libel proof doctrine. While it affirms that convicted felons generally retain the rights of other citizens, it does not preclude a defense which is incidental to the conviction of a crime as such, but which runs to a plaintiff's reputation which follows her conduct.

Furthermore, although the laws of the State of Kansas, under which *Lamb v. Rizzo*, 391 F.3d 1133 (10th Cir. 2004) was decided, may not include a parallel statute explicitly retaining the general civil right of convicted felons, neither does any Kansas statute prevent convicted felons from maintaining a civil lawsuit. The fact that convicted felons are permitted to maintain a civil action does not prevent application of the libel proof plaintiff defense in Kansas and it does not have that effect in Oregon, either.

Neither the Oregon legislature nor the Oregon courts have rejected application of the libel proof defense, and it has been accepted by multiple federal appellate and district courts, as well as state appellate and trial courts, in addition to the Tenth Circuit. *See, e.g., Cardillo v. Doubleday & Co.*, 518 F.2d 638, 639 (2d Cir. 1975); *Wynberg v. National Enquirer, Inc.*, 564 F. Supp. 924 (C.D. Cal. 1982); *Davis v. The Tennessean*, 83 S.W. 3d 125 (Tenn. Ct. App. 2001).

Plaintiffs cannot establish a probability of success of their claims based on statements relating to Liysa Northon's criminal activity.

---

Similarly, there is nothing in the Book from which a reader could reasonably draw the conclusion that Wayland DeWitt is a "religious zealot," as he contends in his affidavit, albeit without any citation, as always. (Wayland DeWitt Aff. ¶ 8.)

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

5.        **The incremental harm defense applies to all plaintiffs.**

Plaintiffs correctly point out in their Response that the United States Supreme Court has found the incremental harm doctrine to be grounded in state law.  (Pls.' Resp. at 20 (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991).)  The Court explained, "[S]tate tort law doctrines of injury, causation, and damages calculation might allow a defendant to press the argument that the statements did not result in any incremental harm to a plaintiff's reputation."  501 U.S. at 523.  Thus, as defendants discussed in their Memorandum in Support of their Special Motion to Strike Plaintiffs' claims, the incremental harm doctrine is closely related to causation problems that defeat a plaintiff's cause of action.

Under Oregon law, as has been noted, in order to succeed on a defamation claim, a plaintiff must prove that the defendant made a false and defamatory statement: "one that tends so to harm the reputation of another as to lower him in the estimation of the community." *Brown v. Gatti*, 195 Or. App. 695, 704, 99 P. 3d 299 (2004).  "This court has applied, in cases of libel, the rule that if the injury for which the plaintiff seeks damages may have resulted from some cause other than the purported defamation, the plaintiff cannot recover unless the evidence shows that the latter, rather than the other competing causes, was the more probable." *Marr v. Putnam*, 213 Or. 17, 321 P. 2d 1061 (1958) (citing *DeLashmitt v. Journal Publishing Co.*, 166 Or. 650, 114 P.2d 1018 (1941)).

In Oregon, in order to be defamatory, the challenged statement must have been what caused harm to the plaintiff's reputation, as opposed to some other cause.  Thus, if the harm was caused by some unchallenged or unchallengeable, nonactionable statement, plaintiffs' claim cannot stand.  Plaintiffs cannot establish a probability of success of their claims based on statements for which they have suffered only inconsequential harm.

**D.        Plaintiff's alternative motion for leave to amend should be denied.**

Plaintiffs alternatively assert that, if this Court finds that the Complaint "does not sufficiently state a cause of action," the Court should grant plaintiffs leave to amend the

Page 21 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150

Complaint.  (Pls.' Resp. at 20.)  Defendants oppose this suggestion; allowing such a procedural maneuver would contradict the plain language of Oregon's anti-SLAPP statute.

Plaintiffs' request for leave to amend its complaint if the court rules in favor of defendants ignores the express language in Oregon's anti-SLAPP statute.  The statute directs that "[u]pon granting the special motion to strike, the court *shall* enter a judgment of dismissal without prejudice."  ORS 31.150(1) (emphasis added).  There is no ambiguity in the statute as to whether a plaintiff should instead be allowed to amend his complaint; the procedural outcome upon granting the motion is express.

**E.    Plaintiff's request for additional discovery should be denied.**

Plaintiffs have provided no rationale for this Court to grant discovery pending the Court's anti-SLAPP ruling.   Oregon's anti-SLAPP statute is clear: "All discovery in the proceeding shall be stayed upon the filing of a special motion to strike under ORS 31.150."  ORS 31.152(2).  The statute does allow for limited, "specified discovery" upon a motion that properly demonstrates "good cause."  *Id.*  Plaintiffs (1) have not filed such a motion, (2) have made no attempt to demonstrate such cause, and (3) have not attempted to tailor any requested "specified discovery."  *See Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1271 (C.D. Cal. 2001) (discovery denied absent showing of necessity and relevance).  California courts faced with analogous situations have held that discovery is not warranted where the plaintiff fails to properly file a motion for discovery and/or fails to demonstrate good cause for specialized discovery.  *See, e.g.*, *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 593 (2003) (good cause requires showing "that a defendant or witness possesses evidence needed by plaintiff to establish a prima facie case"; plaintiff's desire to "test" the opponent's declaration is not sufficient) (internal citation omitted); *Tuchscher Dev. Enterprises, Inc. v. San Diego Port Dist.*, 106 Cal. App. 4th 1219, 1248 (2003) ("[T]he statute requires *both* a timely motion and a showing of good cause. Absent either, the request must fail.") (emphasis original).  Plaintiff's

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

PPDX 1471830v1 42146-6

failure to comply with the procedures outlined in Oregon's anti-SLAPP statute warrants the same outcome here.[12]

DATED this 31st day of July, 2006 .

**DAVIS WRIGHT TREMAINE** LLP

By  /s/ Carol A. Noonan
Duane Bosworth, OSB #82507
Carol Noonan, OSB #02407
Derek Green, OSB #04296
Telephone: (503) 241-2300
Facsimile: (503) 778-5299
Of Attorneys for Defendants Ann Rule, Free Press, and
Simon & Schuster

---

[12] Plaintiffs claim that "the ability to conduct discovery would obviously place Plaintiffs in a better position to make a showing that it is probable they will prevail."  (Pls.' Resp. at 22.) Defendants strongly disagree.  Discovery propounded to defendants will not help plaintiffs make their required showing of the falsity of particular statements, for one example.

Page 23 - REP. IN SUPP. OF SPECIAL MTN TO STRIKE CLAIMS PURSUANT TO ORS 31.150