IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LIYSA NORTHON, et al.,

                Plaintiffs,

      v.

ANN RULE, et al.,

                Defendants.

No. CV 06-851-MO

OPINION & ORDER
RE: ATTORNEY FEES & COSTS

**MOSMAN, J.,**

       In February 2007, I granted defendants' special motion to strike claims pursuant to Or. Rev. Stat. § 31.150. Thereafter, defendants filed a bill of costs and a motion for attorney fees. Plaintiffs have not responded to either. Because I find the amount of time reportedly spent by defendants' counsel in this case was unreasonable, I GRANT IN PART AND DENY IN PART the motion for fees (#29) in the amount of $40,000. Defendants' bill of costs (#27) is GRANTED in full.

**BACKGROUND**

       Defendant Ann Rule wrote a true-crime book, entitled *Heart Full of Lies*, about the events surrounding plaintiff Liysa Northon's murder of her husband. Ms. Rule related the events

PAGE 1 - OPINION & ORDER RE: ATTORNEY FEES & COSTS

of the crime based on extensive research she conducted of both public and private sources.  At the end of the book, Ms. Rule included an Afterword where she presented her own opinions concerning the events.  In particular, she stated that she did not believe Ms. Northon's claim that she was a battered wife.  Ms. Northon and two members of her family filed suit against Ms. Rule and her publishing company for defamation and false light based on 126 separate statements made in the book.  Thereafter, defendants filed a special motion to strike plaintiffs' claims under Oregon's anti-SLAPP[1] statute, Or. Rev. Stat. § 31.150, specifically responding to each of defendants' allegations.  I granted the motion to strike on February 5, 2007.

Defendants now seek their attorney fees under Or. Rev. Stat. § 31.152(3) in the amount of $209,334.36 and their costs in the amount of $1,627.10.  Defendants are represented by three attorneys from Davis Wright Tremaine, LLP.  Lead counsel, Duane Bosworth, is a partner at the firm with over 20 years experience in media law.  The other two attorneys are litigation associates; Carol Noonan with five years experience, and Derek Green with two years experience.  At the hearing held on April 30, 2007, to discuss the motion for fees, counsel represented that collectively they spent 192 hours doing legal research, 222 hours drafting court documents, and 334 hours investigating the facts of the case.  Counsel further clarified that Mr. Bosworth spent 139/65/179 hours doing research/drafting/investigation, Ms. Noonan spent 21/102/60 hours, and Mr. Green spent 32/55/95 hours.

**DISCUSSION**

I.)   <u>Motion for Attorney Fees</u>

In diversity cases, attorney fee awards are governed by state law.  *Gardner v. Martin*, 2006 WL 2711777, *2 (D. Or. Sept. 19, 2006) (unpublished).  Or. Rev. Stat. § 31.152(3) provides that a "defendant who prevails on a special motion to strike made under ORS 31.150 *shall* be awarded reasonable attorney fees and costs." (emphasis added).  Thus, the defendants'

---

[1]"Anti-SLAPP" is an abbreviation for "Anti-Strategic Lawsuit Against Public Participation."

entitlement to fees and costs is not at issue here, only the amount. *Gardner*, 2006 WL 2711777,

*3. To determine a reasonable amount of fees, the court considers the factors set out in Or. Rev.

Stat. § 20.075(1)[2]&(2).[3]

    A.    <u>Subsection (1) Factors</u>

Defendants rely on three subsection (1) factors in support of their request for fees. First,

they argue the plaintiffs' claims and arguments were unreasonable. In the amended complaint,

plaintiffs identified 126 separate statements from defendant Ann Rule's book that they claim

---

[2]    (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
(b) The objective reasonableness of the claims and defenses asserted by the parties.
(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.
(h) Such other factors as the court may consider appropriate under the circumstances of the case.

[3]    (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
(c) The fee customarily charged in the locality for similar legal services.
(d) The amount involved in the controversy and the results obtained.
(e) The time limitations imposed by the client or the circumstances of the case.
(f) The nature and length of the attorney's professional relationship with the client.
(g) The experience, reputation and ability of the attorney performing the services.
(h) Whether the fee of the attorney is fixed or contingent.

PAGE 3 - OPINION & ORDER RE: ATTORNEY FEES & COSTS

were defamatory or unlawfully placed plaintiffs in a false light.  Upon review, it is clear plaintiffs' claims were unreasonable on numerous grounds as to several of the challenged statements.  In fact, in their response to defendants' special motion to strike, plaintiffs did not refute defendants' individualized responsive arguments as to each statement, instead conceding "many of these inaccuracies are not defamatory individually."  Pls.' Resp. to Defs.' Anti-SLAPP Mot. at 6.  Plaintiffs then proceeded to argue the "cumulative effect" of the statements was defamatory.  However, this more generalized argument was previously rejected as insufficient in this case.  Thus, I find this factor favors defendants.

Second, defendants argue an award of fees "will deter meritless claims while encouraging the defense of a speaker's first amendment rights."  Def.'s Mem. in Supp. Mot. for Atty. Fees at 4.  The statutory scheme makes clear that at least one purpose for awarding fees in this context is to deter meritless claims challenging the exercise of free speech.  However, there must be a balance between discouraging illegitimate claims and discouraging legitimate ones, and here, I find the extraordinary amount requested by defendants tips the balance towards the latter.  The motion to strike was intended to be a time-saving and a *cost-saving* mechanism.  *Gardner*, 2006 WL 2711777, *7.  This is evidenced by the fact that discovery is stayed pending resolution of such a motion. Or. Rev. Stat. § 31.152(2).  It is beyond comprehension, let alone reasonableness, that litigating a case only as far as a special motion to strike costs over $200,000 in legal fees, especially considering these motions must be filed within 60 days of serving the complaint and are essentially the first thing the defendant does in the case.  *Id.* § 31.152(1).  Were such an extraordinary request granted without comparably extraordinary circumstances, certainly some litigants with meritorious claims would be deterred from bringing suit knowing they risk such a monumental fee award should they lose at the first stage of their case.  *Gardner*, 2006 WL 2711777, *5; *Card v. Pipes*, 2004 WL 1403007, *4 (D. Or. June 22, 2004) (unpublished).  This factor favors plaintiffs.

Finally, defendants argue plaintiffs acted unreasonably and were not diligent in litigating

PAGE 4 - OPINION & ORDER RE: ATTORNEY FEES & COSTS

this case.  Or. Rev. Stat. § 20.075(1)(e).  Defendants primarily point to plaintiffs' repeated failure to adequately plead their claims, necessitating multiple amended complaints and a motion to dismiss.  However, all of this activity occurred in a prior action that was ultimately dismissed.  Defendants agreed as a condition of the dismissal not to seek fees in relation to the earlier action and in fact they are not seeking such fees.  Defs.' Mem. in Supp. Atty. Fees at 5.  Thus, I find this history of little relevance to the issue at hand.  I also find that apart from some of the arguments asserted by plaintiffs, discussed above, there was nothing particularly unreasonable or dilatory about their actions here.  As such, this factor is neutral.

B.    Subsection (2) Factors

Next, I consider the factors in § 20.075(2).  At the outset, I note that many of these considerations, including time limitations imposed by the client, the nature of counsels' relationship with the client, and the fee arrangement, have no apparent relevance here.  The time and skill required in light of the issues presented, however, is particularly relevant.  Defendants' primary argument on this point is that plaintiffs' decision to challenge over 100 individual statements necessitated that they spend a significant amount of time responding to each individual allegation.  It was certainly appropriate for defendants to respond to each of plaintiffs' allegations specifically, and this undoubtedly took more time than might be required in other cases.  However, even in light of plaintiffs' pleading strategy, I find the amount of time counsel spent in this case was unreasonable.

To begin with, the issues presented here, though numerous, were not particularly difficult.  Plaintiffs pled basic tort claims with some First Amendment implications, and defendants' lead counsel has significant experience in this area of the law, and has litigated at least one other anti-SLAPP motion on behalf of a media client.  *See Gardner*, 2006 WL 2711777.  Thus, to the extent the issues might be novel or unfamiliar to other lawyers, that is certainly not the case here.

Defendants contend there was significant difficulty because "[b]ringing and supporting a special motion to strike . . . is very similar to obtaining a complex summary judgment."  Defs.'

PAGE 5 - OPINION & ORDER RE: ATTORNEY FEES & COSTS

Mem. in Supp. Mot. for Atty. Fees at 8. A similar argument was rejected by this court in

*Gardner*. 2006 WL 2711777, *7-8. There, Magistrate Judge Hubel explained that the motion to

strike is a "a tool to dispose of lawsuits . . . before a great deal of time and money has been

expended," and in fact the statute equates the motion to strike with a motion to dismiss. *Id.* at *7

(citing Or. Rev. Stat. § 31.150(1)). The court went on to explain that even though "some

evidentiary investigation and presentation" is necessary to bring a special motion to strike, "[i]t is

the plaintiff responding to the motion . . . who has the laboring oar. A defendant's burden is

simply to make a prima facie showing." *Id.* at *8. Here, even though defendants' task was

perhaps more difficult than usual given plaintiffs' numerous allegations, it is beyond my

understanding how it could take 334 hours of factual investigation to establish a prima facie case.

Mr. Bosworth alone spent 179 hours investigating the facts of the case. Assuming he works 60-

hour weeks, that means he spent the equivalent of three weeks doing nothing but investigation,

which in this case consisted largely of reviewing Ms. Rule's book and her supporting research.

And that is just the time spent by Mr. Bosworth; his colleagues spent *another* 155 hours

investigating facts. I think it is fair to say that many true-crime books have been researched and

written in less time than was spent on factual investigation in this case. Not only is awarding

fees for this amount of time unreasonable, it would directly undermine the legislature's purpose

in creating the special motion to strike to allow an early and efficient resolution of certain cases

involving the exercise of important public rights. Thus, I find the difficulty of the issues

presented, particularly in light of the relevant statutory scheme, does not support the amount of

hours for which defendants seek to recover their fees.

    Additionally, the imbalance between the time spent by the senior attorney in relation to

the junior attorneys unreasonably inflated defendants' fee request. It is expected that litigation is

often performed in teams and that the team leader delegates responsibility according to the talent

of each team member and oversees the entire project. It is also expected that senior attorneys are

more efficient than their less-experienced counter-parts. *See id.* at *11. Here, there was

apparently little delegation in relation to legal research and fact investigation. As stated above, Mr. Bosworth reportedly spent 179 hours investigating facts, compared to Ms. Noonan's 60 hours and Mr. Green's 95 hours. Likewise, Mr. Bosworth spent 139 conducting legal research, whereas Ms. Noonan and Mr. Green only spent 21 hours and 32 hours, respectively. This is surprising, especially as relates to legal research, because this is a task that even inexperienced lawyers are generally thought competent to handle.

Of course, the client or the lawyer can make their own decisions about how to staff the case, but such decisions must be reasonable. As stated in *Gardner*, where the more senior attorney decides to do most of the work himself, the court "expect[s] to see fewer hours billed than would be reasonably expended by a more junior attorney at a lower hourly rate." 2007 WL 2711777, * 11. The court expects to see efficiency in correlation with the attorney's experience. Here, I am not persuaded Mr. Bosworth's billed hours represent efficient use of time in relation to his level of experience. Based on my own review,[4] it appears he spent 61 hours doing legal research for defendants' initial anti-SLAPP motion and supporting memorandum. This is a significant amount of time for any case and is certainly much more than would be expected for a case within the lawyer's specific expertise. If this billing is to be believed, a senior partner who justifiably presents himself as an Anti-SLAPP expert spent a long week learning the law related to this relatively narrow statute. And did so in a case that was not legally complicated; and did so

---

[4]In their initial pleading, defendants did not identify how much time was spent by each attorney or how much time was spent category of activity. This failure spurred the court to hold a hearing on the motion for fees in April 2007. In preparation for that hearing, the court instructed:

> [D]efendants should be prepared to state the hours attributable to each attorney, and break out those hours by categories, including research, factual investigation, and drafting. Defendants should also provide some further justification for this extraordinary request, in light of the purposes of Or. Rev. Stat. 31.150 and the court's opinion in *Gardner v. Martin*.

At the hearing, defense counsel did provide an oral explanation of the time allocation requested by the court, but no further written documentation or explanation was ever received.

PAGE 7 - OPINION & ORDER RE: ATTORNEY FEES & COSTS

within a few months of concluding a very similar case in this courthouse.[5]

I also find there are other examples of inefficiency and duplicative efforts. Again, focusing specifically on the initial motion to strike, it appears counsel spent 167.5 collective hours drafting the motion and supporting memorandum and declaration. Together these pleadings comprise approximately 100 pages. Thus, counsel spent an average of an hour and a half writing each page. This is dumbfounding, especially in a case like this where many of the issues were interrelated and repetitive. The supportive memorandum is 88 pages long. In addressing plaintiffs' defamation claim, counsel detailed each of their clients' defenses in general terms and then proceeded to discuss each of the challenged statements individually, identifying which defenses applies to each statement. As previously stated, there is nothing inherently unreasonable or improper about this format. But, it is beyond credulity that counsel reasonably spent an hour and a half writing each page given that this format calls for a significant amount of repetition. It is not as if there were a 100 separate issues; rather, there were a handful of issues applied to numerous individual statements, many of which were very similar or even identical. In fact, in addressing the individual statements, counsel often simply identified the relevant defenses in just a few sentences, with little or no analysis.

Counsel's allocation of the writing was also inefficient and unnecessarily duplicative. It appears that all three attorneys worked on each issue briefed. For example, defendants' memorandum in support of the motion to strike encompassed 35 pages responding to plaintiffs' false light claim. Ms. Noonan initially spent 10.5 hours drafting this section. Then Mr. Green

---

[5]In this case, I am solely addressing the *amount of time* asserted by counsel, and not counsel's proffered reasonable hourly rate. In *Gardner*, Judge Hubel rejected counsel's requested commercial litigator rate in favor of the lower general civil defense rate on the basis that these type of anti-SLAPP cases do not present sufficient difficulty to warrant the higher rate. *Id.* at *10-11. Here, I assume counsel's requested specialty rate is reasonable. But this is another reason I find the amount of time reflected in this fee petition is excessive. Counsel certainly has sufficient experience warranting the higher specialty rate, but this experience also dictates counsel will act more efficiently. Counsel cannot have it both ways. He cannot seek the higher rate and then bill a number of hours that far exceeds that which would be expected from someone entitled to such rate.

PAGE 8 - OPINION & ORDER RE: ATTORNEY FEES & COSTS

took over, spending 18.4 hours drafting and revising, after which Ms. Noonan spent 3.3 hours "insert[ing] fact information for false light analysis." Bosworth Decl., Ex. 1 at 6. Then Mr. Bosworth spent significant time reviewing and revising the entire document before it was filed.[6] This hot-potato approach to writing undoubtedly increased the amount of time ultimately spent on the project as each lawyer had to familiarize and refamiliarize himself or herself with the specific legal issues and related facts.[7] As already discussed, it is expected that litigation is often performed in teams where the senior partner oversees the work of less-experienced associates. But where the division of labor causes unnecessary overlap or waste, it is unreasonable to impose on the opposing party the full monetary extent of counsel's actions.

For these reasons, I find the amount of hours claimed by counsel is unreasonable. Based on counsel's billing sheets, there is no principled way for me to identify and separate out the time reasonably expended from that which was unreasonable. I can only say that I consider the excess here to be very large. Thus, in an effort to reduce the inefficiencies and excesses identified above, I award the defense team attorney fees of $40,000. I have selected this amount because I believe the factors listed above reflect work at about one-fifth of the billed amount.

There is a significant disparity between counsel's request and my assessment of what is reasonable in this case. I recognize the possibility that I am missing something. But, even if there is some explanation for this extraordinary fee request that I am missing, counsel has failed to point out what it is, as is their burden. As explained previously, the pleadings here failed to explain or justify the extent of counsel's request. Even after the court alerted counsel of its concerns and requested further guidance, counsel only gave an oral accounting and categorization of their time. No further satisfactory explanation was provided. Thus, an award limited to

---

[6]There are numerous other entries that are likely related to this section of the memorandum, but I have only focused on the ones specifically identifying "false light."

[7]I shall save for another day any comment on how this systems affects the *quality* of the writing. For now, I focus only on the *efficiency* of this method. But as a major consumer of legal writing, I have seen how this approach robs writing of clarity, brevity, and power.

PAGE 9 - OPINION & ORDER RE: ATTORNEY FEES & COSTS

$40,000 is the only reasonable outcome based on the record before me.

2.)   Bill of Costs

Defendants also seek recovery of their costs in the amount of $1,627.10 for court filing fees, docket fees, and photocopying fees.  As previously stated, Or. Rev. Stat. § 31.152(3) provides for recovery of costs.  Further, all of these fees are properly recoverable under 28 U.S.C. §§ 1920 and 1923.  Defendants' bill of costs is GRANTED in total.

## CONCLUSION

For the foregoing reasons, defendants' motion for attorney fees (#29) is GRANTED IN PART AND DENIED IN PART in the amount of $40,000, and defendants' bill of costs (#27) is GRANTED in full.


DATED this   11th   day of July, 2007.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge